**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

J & J SPORTS PRODUCTIONS, INC.,  )
              )
    Plaintiff,        )
              ) No. CIV 13-312-TUC-CKJ
vs.              )
              ) **ORDER**
LUIS HECTOR MARGAILLAN, et al., )
              )
    Defendants.      )
_____ )

Pending before the Court is Plaintiff's Application for Default Judgment by the Court (Doc. 15). The Clerk of the Court has entered default.

*Factual and Procedural Background*

Plaintiff J & J Sports Productions, Inc., ("J & J Sports") filed a Complaint in this Court on May 4, 2013.

In its Complaint, J & J Sports alleges Defendant Luis Hector Margaillan ("Margaillan"), an individual specifically identified on the Arizona Department of Liquor Licenses and Control license issued for the commercial establishment doing business as Shooters Sportsbar ("Shooters"), located at 1123 G Avenue, Douglas, 85607, is a managing member of Lamco Enterprises, LLC ("Lamco"), which owns and operates Shooters.

J & J Sports alleges that on May 5, 2012, Margaillan had the right and ability to supervise the activities of Shooters, which included the unlawful interception of *Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program* ("the Program"). J & J Sports alleges it was granted, pursuant to contract,

the exclusive nationwide commercial distribution (closed-circuit) rights to the Program. J & J Sports alleges Margaillan specifically directed Shooters employees to unlawfully intercept and broadcast the Program at Shooters or that the actions of the employees of Shooters are directly imputable to Margaillan by virtue of his acknowledged responsibility for the actions of Shooters.

J & J Sports alleges Margaillan as managing member of Lamco Enterprises, LLC and as an individual specifically identified on the liquor license for Shooters, had an obvious and direct financial interest in the activities of Shooters, which included the unlawful interception of the Program. J & J Sports further alleges that the unlawful broadcast of the Program, as supervised and/or authorized by Margaillan resulted in increased profits for Shooters Sportsbar. J & J Sports further alleges Margaillan, as an individual specifically identified on the liquor license for Shooters, had the obligation to supervise the activities of Shooters, which included the unlawful interception of Program, and, among other responsibilities, had the obligation to ensure that the liquor license was not used in violation of law.

J & J Sports also alleges that Lamco is an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of Shooters.

J & J Sports alleges Margaillan and Lamco violated 47 U.S.C. § 605 by their unauthorized publication or use of communications (i.e., the transmission of the Program for which J & J Sports had the distributing rights). J & J Sports alleges the conduct of Margaillan and Lamco was done willfully and for purposes of direct commercial advantage and/or private financial gain. For this violation, J & J Sports asserts it is entitled to the following from each Defendant:

> (a) Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605(e)(3)(C)(ii), and also
>
> (b) the recovery of full costs, including reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

Complaint, Doc. 1, p. 6.

J & J Sports also alleges Margaillan and Lamco violated 47 U.S.C. § 553 by their

unauthorized interceptions, reception, publication, divulgence, display, and/or exhibition of the Program. For this violation J & J Sports asserts it is entitled to the following from each Defendant:

> (a) Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii); and also
>
> (b) Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. § 553(c)(3)(B); and also
>
> (c) the recovery of full costs pursuant to Title 47 U.S.C. Section 553 (c)(2)(C); and also
>
> [(d)] and in the discretion of this Honorable Court, reasonable attorneys' fees, pursuant to Title 47 U.S.C. Section 553 (c)(2)(C).

Complaint, Doc. 1, p. 7.

J & J Sports also alleges Margaillan and Lamco, by their interception, reception, publication, divulgence, display, and/or exhibition of the Program at Shooters, tortiously obtained possession of the Program and wrongfully converted the Program for their own use and benefit. J & J Sports alleges these acts of Margaillan and Lamco were willful, malicious, egregious, and intentionally designed to harm J & J Sports by depriving it f the commercial license fee to which J & J Sports was rightfully entitled to receive from Margaillan and Lamco, and in doing so, Margaillan and Lamco subjected J & J Sports to severe economic distress and great financial loss. Therefore, J & J Sports asserts it is entitled to both compensatory, as well as punitive and exemplary damages, from Margaillan and Lamco for their egregious conduct, theft, and conversion of the Program and deliberate injury to J & J Sports.

On August 27, 2013, J & J Sports filed Declarations of Service as to Margaillan (Doc. 8) and Lamco (Doc. 9).

On September 10, 2013, J & J Sports filed a Request to Enter Default (Doc. 10). The Clerk of Court entered default on September 11, 2013 (Docs. 11 and 13).

On November 4, 2013, J & J Sports filed a Notice of Application and Application for Default Judgment by the Court (Doc. 15). The Notice states a hearing may be scheduled for J & J Sports to present its Application to the Court. The Court finds the documents and

records present the issues sufficiently and declines to set this matter for a hearing.[1]

*Adequacy of Service of Process*

As a preliminary matter, the Court addresses the adequacy of the service of process on Margaillan and Lamco. *See e.g., Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1345 (5th Cir. 1992) (Where default "is based on a void judgment under rule 60(b)(4), the district court has no discretion-the judgment is either void or it is not. If a court lacks jurisdiction ... because of insufficient service of process, the judgment is void and the district court must set it aside.); *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851-52 (9th Cir. 1992) (finding that where a plaintiff "failed to serve [defendant] properly ... the default judgments [wa]s void").

Based on the Declarations of Service (Docs. 8 and 9) and the Affidavits in Support of J & J Sports' Requests to Enter Default (Docs. 10-1 and 12-1), it appears that the Complaint was properly served on Margaillan and Lamco. Additionally, the Requests to Enter Default and the Notice of Application for Default Judgment by the Court were mailed to Margaillan and Lamco (Docs. 10, 12, and 15).

*Default Judgment and Eitel Factors*

Because service of the Complaint appears to have been proper, the Court now addresses the merits of J & J Sports' application for default judgment. After entry of a default, a court may grant a default judgment on the merits of the case. *See* Fed.R.Civ.P. 55. The "district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Factors that a court may consider in exercising that discretion include:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive

---

[1] J & J Sports also filed a response to the Court's order to show cause why this matter should not be dismissed for failure to prosecute. The Court finds J & J Sports has presented cause; the Court declines to dismiss this matter.

- 4 -

claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As default has already been entered in this case, the Court must take as true all factual allegations in J & J Sports' Complaint except for those related to the amount of damages. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks omitted); *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002).

*Possibility of Prejudice to J & J Sports*

The Court first considers whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*. Based on the documents submitted by J & J Sports, it appears that Margaillan and Lamco do not contest that Margaillan and Lamco violated 47 U.S.C. § 605, violated 47 U.S.C. § 553, and committed a tortious conversion. The Court concludes J & J Sports would suffer prejudice if its motion for default judgment were denied because it would be "without other recourse for recovery." *Pepsico, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002).

*Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint*

The Court also considers that *Eitel* "require[s] that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D.Cal.2003) (internal quotation marks omitted).

As to J & J Sports' claim that Margaillan and Lamco violated 47 U.S.C. § 605 and 47 U.S.C. § 553, these statutes provide for a private right of action. Further, J & J Sports has alleged claims upon which relief may be recovered. Additionally, J & J Sports has stated a claim for conversion on which J & J Sports may recover. *See Miller v. Hehlen*, 209 Ariz.

1  462, 104 P.3d 193 (App. 2005) (discussing elements of conversation).

2

3  *Sum of Money at Stake in Action*

4  For the fourth *Eitel* factor, "the court must consider the amount of money at stake in
5  relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F.Supp.2d at 1176. If the
6  sum of money at stake is completely disproportionate or inappropriate, default judgment is
7  disfavored. In this case, J & J Sports seeks statutory damages and an award for the
8  conversion equal to the cost that Margaillan and Lamco would have incurred had they
9  subscribed to the Program. The Court finds the nature of the requested damages is
10 appropriate.

11

12 *Possibility of Dispute Concerning Material Facts*

13 The Court also considers the possibility of dispute as to any material facts in the case.
14 Here, there is little possibility of dispute concerning material facts because (1) based on the
15 entry of default, the Court accepts all allegations in J & J Sports' complaint as true (except
16 for those relating to damages) and (2) Margaillan and Lamco have not made any attempt to
17 challenge J & J Sports' Complaint or even appear in this case.

18

19 *Whether Default Was Due to Excusable Neglect*

20 Usually, a court will ask whether the failure to answer is due to excusable neglect. *See*
21 *Eitel*, 782 F.2d at 1472 (noting that the fact that the parties were engaged in settlement
22 negotiations excused defendant from failing to answer). In the instant case, Margaillan and
23 Lamco were properly served with the Summons and Complaint. Moreover, J & J Sports has
24 mailed subsequently-filed documents to Margaillan and Lamco. Given these circumstances,
25 it is unlikely that Margaillan's or Lamco's failure to answer and the resulting default were
26 a result of excusable neglect. *Cf. Shanghai Automation Instrument Co. v. Kuei*, 194
27 F.Supp.2d 995, 1005 (N.D.Cal. 2001) (concluding no excusable neglect because defendants
28 "were properly served with the Complaint, the notice of entry of default, as well as the papers

1 in support of the instant motion").

*Policy Underlying Federal Rules of Civil Procedure*

Generally, default judgments are disfavored because "cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, because a discretionary standard is applied, "default judgments are more often granted than denied." *Pepsico v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal. 1999). Indeed, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D.Cal. 2002). Moreover, Margaillan's and Lamco's failure to answer the Complaint makes a decision on the merits impractical, if not impossible. Margaillan and Lamco have failed to respond to the lawsuit and J & J Sports has specifically pleaded facts supporting the claims as discussed by the Court; therefore, the policy encouraging decisions of cases on their merits does not weigh against granting default judgment here.

*Summary*

Based on all the *Eitel* factors discussed above, the Court finds J & J Sports' Application for Default Judgment should be granted.

*Damages*

Having determined that the Application for Default Judgment should be granted, the Court now turns to the matter of damages. J & J Sports' Application for Default Judgment seeks $ 110,000.00 for the violation of 47 U.S.C. § 605(e)(3)B)(iii) and (c)(ii) and $ 2,200.00 for the tort of conversion. J & J Sports' Application for Default Judgment does not seek an amount for the violation of 47 U.S.C. § 553.

A successful plaintiff can recover statutory damages of at least $1,000 and at most $10,000 for a violation of 47 U.S.C. § 605(e)(3)(C)(i)(II). These damages may be increased by up to $100,000 if a communication was intercepted and published "willfully and for

- 7 -

1 purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. §
2 605(e)(3)(C)(ii). "Courts consider numerous factors when assessing whether enhanced
3 damages are appropriate, including 'prior infringements, substantial unlawful monetary
4 gains, significant actual damages to the plaintiff, the defendant's advertising of the broadcast,
5 and the defendant's charging a cover charge or premiums for food and drinks during the
6 broadcast.'" *J & J Sports Productions, Inc. v. Guzman*, No. CV 12–00525–PHX–FJM, 2012
7 WL 3108831 * 1 (D.Ariz. 2012), *citation omitted*. In another case, the court considered the
8 following factors: "(1) the size of the offending establishment; (2) the number and size of
9 screens displaying the pirated broadcast; (3) any evidence of advertising the pirated broadcast
10 to attract customers; (4) any cover change made to patrons of the establishment broadcasting
11 the pirated transmission; (5) any premium for any food and drink charged for any pirated
12 transmission; (6) the need to deter future violations; (7) the difficulty in detecting the
13 unlawful acquisition of the broadcast; and (8) the widespread loss that occurs through
14 pirating license transmissions." *J & J Sports Productions, Inc. v. Stone*, No.
15 CV–13–00936–PHX–GMS, 2013 WL 5169667 * 1 (D.Ariz. 2013). "The need for deterrence
16 is balanced against the harm to the defendant's business if significant damages are assessed."
17 *Guzman*, at * 1.

18 As default has been entered against Margaillan and Lamco, the Court accepts that
19 Margaillan and Lamco admit that they published the Program to their customers without a
20 license, and did so "willfully and for purposes of direct and/or indirect commercial advantage
21 and/or private financial gain." Complaint, Doc. 1, p. 5. There is no evidence of prior
22 infringements, substantial unlawful monetary gains, significant actual damages to Sport,
23 advertising by Margaillan and Lamco, or the charging of a cover charge or a premiums for
24 food and drinks during the broadcast. Moreover, the affidavit of the investigator indicates
25 he observed three employees working at the time of the broadcast and one person sitting at
26 the bar watching the fight – the investigator does not clarify if any other persons were in
27 Shooters at the time of the broadcast, but does states that the same people who were there
28 when he arrived were there when he left. *See* Doc. 15-3. The investigator also listed six cars

he observed in the parking lot and in nearby street parking spots – he does not specify if there were any further unidentified cars parked nearby. *Id.* Lastly, the investigator observed at least seven televisions in Shooters – he did not specify how many of the screens were broadcasting the Program. *Id.*

The Court concludes an enhanced damages award is not appropriate. The Court finds statutory damages in the amount of $ 2,000.00 for the violation of 47 U.S.C. § 605 to be appropriate. Additionally, the Court finds an award of $ 2,200.00, the apparent cost Margaillan and Lamco would have incurred had they subscribed to the Program, *see* Doc. 17, ¶ 8, is warranted for the tort of conversion.

Lastly, J & J Sports requests an award of its costs and attorneys' fees. J & J Sports may file a bill of costs in accordance with LRCiv 54 .1 and Fed.R.Civ.P. 54(d)(1), and a motion for attorneys' fees pursuant to Fed.R.Civ.P. 54(d)(2).

Accordingly, IT IS ORDERED:

1. J & J Sports' Application for Default Judgment (Doc. 15) is GRANTED IN PART.

2. Default judgment is awarded in favor of J & J Sports and against Margaillan and Lamco in the amount of $ 4,200.00.

3. The Clerk of Court shall enter judgment in this case and shall then close its file in this matter.

4. The Clerk of Court shall mail a copy of this Order to:

> Luis Hector Margailan
> 1012 N. G Avenue, Suite 100
> Douglas AZ 85607
>
> Lamco Enterprises, LLC
> 1012 N. G Avenue, Suite 100
> Douglas, AZ 85607

DATED this 17th day of December, 2013.

_____
Cindy K. Jorgenson
United States District Judge